DONNA MILLER, ET AL.,    :
   Plaintiff,     :
          :  CIVIL CASE NO.
  v.        :  3:10-CV-1701 (JCH)
          :
          :
ETHAN ALLEN GLOBAL, INC.  :  AUGUST 22, 2011
   Defendant.    :
          :

**RULING ON DEFENDANT'S MOTION TO DISMISS [Doc. No. 17]**

## I. INTRODUCTION

On September 30, 2010, plaintiff Donna Miller filed a Complaint against

defendant, Ethan Allen Global, Inc. ("Ethan Allen"), in Connecticut Superior Court

alleging violation of the Age Discrimination in Employment Act ("ADEA"), Title VII of the

Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A. §

2000e, and the Connecticut Fair Employment Practices Act, § 46a-58(a) et seq.

("CFEPA").  Miller further alleges negligent supervision, intentional infliction of

emotional distress, and assault and battery.  Miller removed the action from state court

and invoked the jurisdiction of this court under 28 U.S.C. §§ 1331 and 1367.

Ethan Allen filed a Motion to Dismiss Miller's Complaint in its entirety.  Mot. to

Dismiss (Doc. No. 17).  Ethan Allen argues that Miller failed to state a facially plausible

claim upon which relief may be granted.  See Mot. to Dismiss at 2.  Miller subsequently

filed an Objection to the Motion to Dismiss, and Ethan Allen then filed a reply

memorandum.

For the reasons that follow, the court grants in part and denies in part Ethan

Allen's Motion to Dismiss.

## II.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show he is entitled to relief.  See Bell Atlantic Corp v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief' ").  The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of N. Y., 130 S. Ct. 983, 986-87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F. 3d 37, 43 (2d Cir. 2009).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp., 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard.  Boykin v. KeyCorp, 521 F. 3d 202, 213 (2d Cir. 2008.)  The plausibility standard does not "require[ ] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8." Arista Records, LLC v. Doe

3, 604 F. 3d 110, 119 (2d Cir. 2010); see Erickson v. Pardus, 551 U.S. 89, 94 (2007)

(holding that dismissal was inconsistent with the "liberal pleading standards set forth by

Rule 8(a)(2)").  However, the plausibility standard does impose some burden to make

factual allegations supporting a claim for relief.  As the Iqbal court explained, it "does

not require detailed factual allegations, but it demands more than an unadorned, the

defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do.

Nor does a complaint suffice if it tenders naked assertions devoid of further factual

enhancement."  Iqbal, 129 S. Ct. at 1949 (citations and internal quotations omitted).

Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging the

plaintiff "to amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim plausible."  Boykin, 521 F. 3d at 213

(citations omitted); accord Arista Records, 604 F. 3d at 120.

## III.    FACTUAL BACKGROUND[1]

Miller was an employee of Ethan Allen from September 2006 until August 2009.

Compl. at ¶ 4.  During her employment, Miller held the position of Customer Service

Representative before being promoted to Upholstery Supervisor on account of her

excellent performance, evidenced by her receipt of eleven client services awards.  Id. at

¶¶ 3, 8.

At the time Miller accepted her promotion, she was promised a raise and training

---

[1] Taking the factual allegations in the Complaint as true, and drawing all reasonable
inferences in favor of the plaintiff, the court assumes the following facts for the purposes of the
Motion to Dismiss.

for her new position; however, she never received either.  Id. at ¶¶ 14-6.  Milller's new position consisted of more responsibilities, and she was expected to make the department more efficient than it had been previously.  Id. ¶ 15.  Ethan Allen had reduced the staff of Miller's new department by half at the time she accepted her new position.  Id.

During the course of Miller's employment, Paula Mandeville functioned as her supervisor.  Id. at ¶ 9.  On July 31, 2009, Mandeville approached Miller's desk, pushed her shoulder, removed her hand from her telephone, and then proceeded to disconnect her telephone and forbid her from receiving work-related calls.  Id. at ¶ 20.  Ethan Allen did not address this incident.  Id. at ¶ 21.

During the course of Miller's employment with Ethan Allen, Barbara Legendre was a fellow employee.  Id. at ¶ 17.  At some point in time after Miller received her new position, Legendre approached Miller's desk, grabbed her by the neck and held on.  Id. at ¶¶ 18.  On a subsequent occasion, Legendre slammed papers on Miller's desk and proceeded to deride Miller and her colleagues.  Id.  Miller complained of one of the incidents to Mandeville who told her to tell Legendre to "fuck off."  Id. at ¶ 19.

Miller asserts that, at some point in time, Ethan Allen commenced a campaign to get rid of her, and other similarly situated employees, because of their age, and succeeded in systematically getting rid of older aged employees.  Id. at ¶¶ 11-3.

Ethan Allen conducted a performance review of Miller in her new position, comparing her to prior supervisors, which "revealed low results."  Id. at ¶¶ 22-3.  Ethan Allen then imposed certain conditions on Miller that were not imposed on employees similarly situated to her, and who had never complained about the work environment.

Id. at ¶ 24.  Ethan Allen threatened to fire Miller if she did not meet these conditions.  Id. at ¶ 25.  Miller then complained to Ethan Allen that the demands placed on her were unfair and not required of other similarly situated employees.  However, Ethan Allen did not address these complaints.  Id. at ¶ 26.  Thereafter, Ethan Allen forced Miller to sign the performance review, which Miller signed after stating on the review that she was doing so under duress.  Id. at ¶ 27.

At some later point in time, Ethan Allen demanded Miller prepare a letter of resignation.  Id. at ¶ 28.  Miller prepared the letter although she did not want to leave her employment.  Id. at ¶¶ 28-30.  After Miller submitted the resignation letter, Ethan Allen searched two boxes of her personal belongings and escorted her off the premises.  Id. at ¶ 30.

Subsequent to her resignation, Miller filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and the Equal Employment Opportunity Commission ("EEOC"), and she received a Release of Jurisdiction and a Right to Sue, respectively.  Id. at ¶ 35.

**IV.    DISCUSSION**

A.    Count Two: Claim for Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964

Title VII of the Civil Rights Act of 1964 states: "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a).

Ethan Allen contends that Miller's Complaint lacks sufficient factual allegations to support her gender discrimination claim. <u>See</u> Mot. to Dismiss at 9-14. Although Miller fails to specifically allege within Count Two her exact claims, in response to Ethan Allen's Motion to Dismiss Miller states that her Complaint includes a disparate treatment claim, a hostile work environment claim, and a claim of retaliation. The court will review the Complaint to determine the adequacy of each claimed cause of action.

1. Disparate Treatment Claim in Violation of Title VII

Analyzing whether Ethan Allen subjected Miller to disparate treatment must be done under the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>O'Reilly v. Marina-Dodge, Inc.</u>, No. 102977CV, 2011 WL 1897489, at *1 (2d Cir. May 19, 2011.) A plaintiff is first required to establish a prima facie case of discrimination. <u>See</u> <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 249-52 (1981). A prima facie case for disparate treatment is made out by showing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff performed her job adequately; (3) the plaintiff suffered an adverse employment action; and (4) that the adverse employment action occurred under conditions giving rise to an inference of discrimination. <u>Id.</u> at 1094. "The 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason," regardless of whether the case is presented as one of single or dual motive. <u>Stratton v. Dep't for the Aging for New York</u>, 132 F.3d 869, 878 (2d Cir. 1997). Miller has sufficiently plead facts to satisfy the first three steps, but has failed to failed to satisfy the fourth step of the prima facie case.

Miller argues that the adverse employment actions she suffered include receiving an unfair employment review, being requested to perform in her new position without necessary training or staff, being assaulted by two different employees on separate occasions, being threatened with termination, and ultimately being constructively discharged.  See Objection to Mot. to Dismiss at 11.  The Supreme Court pronounced that an adverse employment action must be "materially adverse," in that it would "dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Railway Co. V. White, 548 U.S. 53, 57 (2006).  Material adversity must be the focus in determining whether an adverse employment action has occurred because "it is important to separate significant from trivial harms."  Id.  Second Circuit precedent, which has found prototypical examples of adverse employment actions to include termination; demotion via a reduced wage, salary or job title; a material loss of benefits; or significantly reduced responsibilities, appears entirely consistent with Burlington.  See Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006).

In the instant case, the court finds only Miller's assault allegations and her constructive discharge claim to be adverse within the meaning of Second Circuit case law.  "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes."  Pa. State Police v. Suders, 542 U.S. 129, 141 (2004).  A constructive discharge occurs when "the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'"  Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983) (internal citations omitted).  "Case law generally focuses on two parts

of this standard: the employer's intentional conduct and the intolerable level of the work conditions." Petrosino v. Bell Atlantic, 385 F.3d 210, 229 (2d Cir. 2004).  For constructive discharge claims based on discrimination or harassment, the conditions must be "harsh enough to justify diverting from the supposition that the underlying policies of Title VII 'will be best served if, whenever possible, unlawful discrimination is attacked within the context of the existing employment relationship.'" Ternullo v. Reno, 8 F.Supp.2d 186, 192 (N.D.N.Y. 1998) (internal citations omitted).

Because the standard for constructive discharge requires an evaluation of how a reasonable employee would behave "'in the employee's shoes," the issue should generally be left to the trier of fact.  Halbrook v. Reichhold Chemicals, Inc., 735 F.Supp. 121, 125 (S.D.N.Y. 1990) (quoting Pena, 702 F.2d at 325).  Even if certain factors, standing alone, are "legally insufficient to support constructive discharge," Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 90 (2d Cir. 1996), the various conditions should not be treated as "separate and distinct rather than additive," since "a reasonable person encounters life's circumstances cumulatively and not individually."  Id.  On the other hand, the "reasonable person" standard is an objective standard that "does not depend on such traditionally triable issues as the subjective reaction of any particular employee to changed working conditions."  Halbrook, 735 F.Supp. at 126.

In this case, the allegations are sufficient as a matter of law to establish constructive discharge.  Miller's constructive discharge claim is based on her receipt of an unsatisfactory performance appraisal, non-receipt of promised training, increased demands upon her work, being told she would be fired if she did not meet certain job conditions, and two incidents of alleged physical assaults that were not addressed by

Ethan Allen.  <u>See</u> Compl. at ¶¶ 14-19, 22-25.  Of these incidents, all but the two assaults do not legally suffice to sustain an inference that a reasonable person would have been "compelled" to resign.  <u>See</u> <u>Stetson v. NYNEX Serv. Co.</u>, 995 F.2d 355, 360 (2d Cir. 1993) ("Nor is it sufficient [for a constructive discharge claim] that the employee feels that the quality of work had been unfairly criticized. . . . Nor is the standard for constructive discharge merely whether the employee's working conditions were difficult or unpleasant."); <u>see also</u> <u>Nobler v. Beth Israel Medical Center</u>, 702 F. Supp. 1023, 1030 (S.D.N.Y. 1988) ("Subjective feelings held by an employee as to the intolerable nature of his or her position are not sufficient to lead to a finding of constructive discharge.")

On the other hand, Miller's allegations as to the two assaults she suffered are sufficient to plausibly establish a constructive discharge, and thus an adverse employment action.  <u>See</u> <u>Pa. State Police v. Suders</u>, 542 U.S. 129, 143 (2004) (holding that Title VII encompasses constructive discharge as a tangible employment action). Taking Miller's allegations as true, an assault is an intentional act that can make a work environment intolerable thus changing the terms and conditions of a plaintiff's employment.  <u>See</u> <u>Petrosino,</u> 385 F.3d at 229 (stating that, if a plaintiff suing for constructive discharge cannot show specific intent, "he or she must at least demonstrate that the employer's actions were 'deliberate' and not merely 'negligent or ineffective'") (internal citations omitted).

While having concluded that Miller has alleged sufficient factual matter to plead an adverse employment action, she has failed to allege sufficient facts to support an inference of discrimination as required by the fourth step of a prima facie case.  To

show that the adverse actions Miller endured took place under conditions giving rise to an inference of discrimination, she must set forth allegations that plausibly support the conclusion that Ethan Allen "treated [her] less favorably than a similarly situated employee outside [her] protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). Miller must specifically show herself to be "similarly situated in all material respects" to the individuals with whom she compares herself. Shumway v. United Parcel Serv. Inc., 118 F.3d 60, 64 (2d Cir. 1997). The test for materiality asks whether Miller and the individuals against whom she compares herself were subjected to the same workplace standards and whether the conduct at issue was of comparable severity. Graham, 230 F.3d at 40 (citing Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 96 (2d Cir. 1999)).

Nowhere in her Complaint does Miller allege to have been treated differently than male employees in the same position. For example, she does not claim to have been subject to disparaging remarks against women. See Harris v. Forklift, 510 U.S. 17, 22-23 (1993). Plaintiff also fails to include any allegations of "gender stereotyping," or discrimination against an individual "who fail[s] or refuse[s] to comply with socially accepted gender roles" from which to plausibly infer gender discrimination. Dawson v. Bumble & Bumble, 398 F. 3d 211, 218 (2d Cir. 2005).[2] Miller's allegations are therefore insufficient from which to plausibly infer a rebuttable presumption of discrimination. Thus, Miller has failed to set forth a plausible claim for disparate treatement.

---

[2] Such a claim would require Miller to allege that she failed to conform "(1) through behavior or (2) through appearance" to female stereotypes. Dawson, 398 F. 3d at 218.

2.    Hostile Work Environment Claim in Violation of Title VII

In order to allege a sex-based hostile work environment claim, Miller must

include facts sufficient to make plausible the claim that Ethan Allen discriminated

against Miller "because of [her] sex."  42 U.S.C. § 2000e-2(a)(1).  This requires Miller to

plausibly establish two elements in her allegations, the first relating to the workplace

environment and the conditions of her employment, and the second relating to the basis

on which Ethan Allen may be held liable.  See Petrosino, 385 F.3d at 221.)

As to the first element, "[A] plaintiff must provide evidence that the workplace is

permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe

or pervasive to alter the conditions of the victim's employment."  Cruz v. Coach Stores,

Inc., 202 F.3d 560, 570 (2d Cir. 2000) (internal citations and quotation marks omitted).

A victim must also subjectively perceive the environment to be abusive.  See Terry v.

Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003).  Whether or not a work environment is

hostile must be determined by the totality of the circumstances.  Id. at 148.  The

Supreme Court and Second Circuit have identified the factors that courts are to

consider in determining whether a hostile work environment exists:

> Among the factors to consider when determining whether an
> environment is sufficiently hostile are "the frequency of the
> discriminatory conduct; its severity; whether it is physically
> threatening or humiliating, or a mere offensive utterance;
> and whether it unreasonably interferes with an employee's
> work performance." . . .  "As a general rule, incidents must
> be more than episodic; they must be sufficiently continuous
> and concerted in order to be deemed pervasive."

Terry, 336 F.3d at 148 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993);

Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)).

While "[i]solated acts, unless very serious, do not meet the threshold of severity or pervasiveness . . . even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." Alfano v. Costello, 294 F. 3d 365, 374 (2d Cir. 2002).  Thus, in order for Miller to sufficiently allege a hostile work environment, she must show that a single incident was "extraordinarily severe", or that a series of events were "continuous and concerted" to have altered the conditions of her employment.  See id.

As to the second element of a hostile work environment claim, Miller must show that "a specific basis exists for imputing the conduct that created the hostile environment to the employer."  Howley v. Town of Stratford, 217 F. 3d 141, 154 (2d Cir. 2000) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)).  Where an employee attributes the hostile work environment to a non-supervisory co-worker, she must show that the employer knew, or reasonably should have known, about the harassment in order to impute liability.  See Petrosino, 385 F. 3d at 225.  As for the actionable conduct of a supervisor, an employer is automatically liable if the harassment resulted in a tangible employment action to the employee.  See id.

Miller's allegations relating to the two instances of assault she experienced at work are sufficient to plausibly impute liability to Ethan Allen.  The assault perpetrated by her co-worker Legendre was reported to her supervisor Mandeville, who is an agent of Ethan Allen and in a capacity to receive this report on behalf of Ethan Allen.  See Compl. at ¶¶ 17-19.  Further, the alleged assault by Mandeville on Miller is automatically imputed on Ethan Allen because Mandeville was Miller's supervisor.

There is limited precedent upon which to assess whether Miller's conditions of

employment were altered on the basis of her allegations at the motion to dismiss stage.

See Mathirampuzha v. Potter, 548 F.3d 70 (2d Cir. 2008) (a postal employee having

been charged, hit in his chest and shoulder, and shoved onto a railing by a co-worker,

who then held on to him tightly for three to five minutes and poked his eye, did not state

a claim for hostile work environment based on this one act of physical assault because

the act was not so severe as to materially alter his working conditions); cf. Howley, 217

F.3d at 154 (a female firefighter having been the victim of one instance of verbal

harassment that was directed at her in front of a large group of male co-workers stated

enough for a hostile work environment claim because it was severe enough to possibly

alter the terms of her employment).  However, at this stage of the case, it is plausible

that Miller can prove facts consistent with the two alleged incidents of physical assault

that were severe enough to alter the terms and conditions of her employment.

However, relying on the same facts for her hostile work environment claim as

those articulated for her disparate treatment claim, none of Miller's allegations plausibly

suggest that the conduct complained of occurred because of her sex.  See, supra, at 6-

10.  In order to sufficiently plead a hostile work environment, Miller must link the

harassment to her claim of gender discrimination.  See Brown v. Henderson, 257 F.3d

246, 252 ("It is axiomatic that mistreatment at work, whether through subjection to a

hostile environment . . . is actionable under Title VII only when it occurs because of an

employee's sex, or other protected characteristic.").  Thus, the court grants Ethan

Allen's Motion to Dismiss as to any hostile work environment claim under Title VII or

CEPA.

3. Unlawful Retaliation Claim in Violation of Title VII and CFEPA

Miller claims that her complaints with regards to her treatment and the hostile work environment were motivating factors in unlawful retaliation against her, thus violating her rights under Title VII and CEPA. <u>See</u> Compl. ¶ 34. A prima facie case of retaliation under Title VII requires sufficient evidence to permit a rational trier of fact to find that: (1) Miller engaged in a protected activity; (2) Ethan Allen was aware of the stated activity; (3) Ethan Allen took a materially adverse action against Miller; and (4) a causal connection exists between the protected activity and the adverse action. <u>Kessler v. Westchester County Dep't of Soc. Servs.</u>, 461 F.3d 199, 205-6 (2d Cir. 2006); <u>Jute v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 173 (2d Cir. 2005); <u>Cifra v. General Electric Co.</u>, 252 F.3d 205, 216 (2d Cir. 2001). Miller's Complaint sets forth allegations to plausibly show that her assault complaint constitutes a protected activity, that Ethan Allen became, or should have become, aware of the activity, and that her constructive discharge is a materially adverse action.

Turning to the fourth element, a plaintiff seeking redress under Title VII may satisfy the causation requirement either (1) directly, through evidence of retaliatory animus directed against Miller by Ethan Allen; or (2) indirectly, by showing that the protected activity in question was closely followed in time by the adverse action. <u>See Cifra v. General Electric Co.</u>, 252 F. 3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."); <u>Gordon v. N.Y. City Bd. of Educ.</u>, 232 F.3d 111, 117 (2d Cir. 2000). Furthermore, a prima facie case of retaliation under Title VII requires the employer to be aware of the protected activity.

<u>Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.</u>, 136 F.3d 276, 292 (2d Cir. 1998). "Implicit in [this] requirement . . . is the requirement that [the employer] understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." <u>Id.</u> Without awareness by a decision-maker, it will be hard to find any causal connection between the protected activity and the adverse action. <u>Id.</u>

Miller refers to Ethan Allen's retaliation in three parts of her Complaint, <u>see</u> Compl. ¶¶ 19, 24, 32, 34. However, these allegations fail to set forth when or to whom she made her complaints, or the content of the complaints. Further, Miller does not provide the court with the timing of her constructive discharge. These allegations are insufficient to plausibly support the inference of a causal connection between Miller's complaint and her constructive discharge. Therefore, these allegations are insufficient to sustain a plausible claim for retaliation.

B.    <u>Count One: Claim for Violation of the Connecticut Fair Employment Practices Act ("CFEPA")</u>

Assuming that Miller can replead facts to establish a violation of Title VII, thus making the case proper under federal jurisdiction, the court considers the adequacy of her CFEPA claim.

1.    Violation of Section 46a-58(a)

Miller alleges that Ethan Allen's conduct violated the CFEPA, section 46a-58(a) of the Connecticut General Statutes. <u>See</u> Compl. at ¶ 36. Ethan Allen moves to dismiss this claim to the extent that Miller relies on section 46a-58(a), arguing that this section does not encompass claims for discriminatory employment practices. <u>See</u> Mot.

to Dismiss at 15-6.

Section 46a-58(a) generally prohibits discriminatory conduct in the context of employment. In Comm'n on Human Rights v. Truelove and Maclean, Inc., 238 Conn. 337, 345-46 (1996), the Connecticut Supreme Court addressed the issue of whether 46a-58(a) encompasses claims of discriminatory employment practices, and concluded that it does not. Id. at 346 ("[T]he specific, narrowly tailored cause of action embodied in, section 46a-60 supersedes the general cause of action embodied in section 46a-58(a)."). Thus, Miller's employment discrimination claims, including disparate treatment, hostile work environment, and retaliation, are not encompassed by section 46a-58(a).

The court therefore grants Ethan Allen's Motion to Dismiss with respect to Count One to the extent that Miller seeks to allege a cause of action pursuant to section 46a-58(a) .

        2.    Violation of Section 46a-60

Ethan Allen argues that all of Miller's CFEPA claims under section 46a-60, other than the constructive discharge claim, are time-barred according to section 46a-82. See Mot. to Dismiss at 14. Miller has failed to address this issue in her objection to the Motion to Dismiss.

The statute and case law are quite clear that, in order for a complaint with the CCHRO to be timely, it "must be filed within one hundred and eighty days after the alleged act of discrimination." Conn. Gen. Stat. § 46a-82(f); see also State v. Comm'n on Human Rights and Opportunities, 211 Conn. 464, 471-73 (1989) (employee cannot recover for employer's acts that occurred more than 180 days prior to filing). Miller's

complaint with the CCHRO was filed on February 23, 2010, which consequently excludes any claims relating to acts sustained prior to August 27, 2009.  <u>See</u> Mot. to Dismiss,  Ex. A.  Miller's Complaint is void of specific dates, other than the July 31, 2009 date marking the alleged assault on her by Mandeville, which is outside the one hundred and eighty day time limit.  <u>See</u> Compl. at ¶ 20.

While "the 180 day time requirement for filing a discrimination petition pursuant to section 46a-82(e) is not jurisdictional, but rather, is subject to waiver and equitable tolling," <u>Williams v. Comm'n on Human Rights and Opportunities</u>, 257 Conn. 258, 264 (2001), neither waiver nor equitable tolling appears to apply in the instant case.  Ethan Allen has not waived the defense.  Further, Miller has not alleged any actions by Ethan Allen that might result in tolling of the statute of limitations.

The court thus finds that, absent a repleaded amended complaint containing temporal allegations to indicate otherwise, Miller's claims pursuant to the CFEPA, other than that for retaliation and constructive discharge, are time-barred.

C.    <u>Count Five: Claim for Violation of the Age Discrimination in Employment Act of 1967 ("ADEA")</u>

Miller claims that the alleged adverse employment actions she suffered violated the ADEA because Ethan Allen acted on the basis of her age.  <u>See</u> Compl. ¶¶ 32-4. Ethan Allen argues that Miller failed to allege facts demonstrating that any alleged actions were conducted on the basis of her age, thus failing to state a claim upon which relief can be granted.  <u>See</u> Mot. to Dismiss at 16-17.

The ADEA prohibits employers from taking an adverse action against an employee "because of such individual's age."  29 U.S.C. § 623(a).  "[T]he ordinary

meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that the age was the 'reason' that the employer decided to act." <u>Gross v. Financial Servs., Inc.</u>, 129 S.Ct. 2343, 2350 (2009). To survive a motion to dismiss, a plaintiff must meet the plausibility standard articulated by the Supreme Court in <u>Iqbal</u>, 129 S.Ct at 1949, in establishing a prima facie case. A prima facie case requires showing that: (1) a plaintiff was within the protected age group at the time of the discrimination; (2) a plaintiff was qualified for the position; (3) a plaintiff suffered an adverse employment action; and (4) said action occurred under circumstances giving rise to an inference of discrimination. <u>O'Reilly</u>, 2011 WL 1897489, at *1.

The Second Circuit employs the burden shifting analysis specified in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), to assess age discrimination claims. <u>See O'Reilly v. Marina-Dodge, Inc.</u>, No. 102977CV, 2011 WL 1897489, at *1 (2d Cir. May 19, 2011.) Under this three-step analysis, Miller must establish a prima facie case of discrimination; Ethan Allen then must articulate a legitimate nondiscriminatory reason for the action; and in turn the burden shifts back to Miller to prove by a preponderance of the evidence that age was the "but for" cause of Ethan Allen's conduct. <u>Id</u>.

Miller failed to plead any facts establishing an inference of discrimination to satisfy the fourth element of the prima facie case. The Complaint lacks any factual allegations of how Ethan Allen "systematically got rid of older employees," Compl. ¶ 13, subjected Miller to "an ongoing pattern of harassment, discrimination and disparate treatment <u>based upon her age</u>," Compl. ¶ 5 (emphasis added), and "disparately and selectively set out to, and did, terminate or force to quit employees <u>based upon their age</u>," Compl. ¶ 12. (emphasis added). Miller states that Mandeville is "significantly

younger than the plaintiff," Compl. ¶ 10, but does not allege any further facts to allow for an inference of discrimination considering that Mandeville's position was not the same as Miller's position, and Mandeville was her supervisor throughout her employment with Ethan Allen.  <u>See</u> Compl. ¶ 9.  Further, stating that she never received a raise she was promised, was required to work with inadequate resources, was never given promised training, was forced to resign, and was given "unfairly low performance reviews," do not alone give rise to an inference of discrimination based upon her age.  <u>See</u> Compl. ¶¶ 14-6, 23, 28.  Although Miller states that Ethan Allen "imposed further conditions upon [her] which it did not place upon others of her age, gender and who had not made complaints about the hostile and abusive work environment," Compl. ¶ 24, she does not allege these conditions.  In sum all of her age allegations are conclusory.

That Miller was a member of a protected class, was qualified for the position, and suffered an adverse employment action are inadequate factual allegations to make out a claim that rises above the speculative level.  The court grants Ethan Allen's Motion to Dismiss as to Miller's ADEA claim.

D.     <u>Count Three: Claim for Negligent Supervision and Negligent Hiring</u>

Miller brought a claim against Ethan Allen for negligent supervision and negligent hiring, alleging that she informed Ethan Allen of the assault made on her by Legendre, but Ethan Allen failed to take any action.  <u>See</u> Compl. ¶¶ 19, 36.  Ethan Allen argues that Miller failed to state a claim upon which relief can be granted.  <u>See</u> Mot. to Dismiss at 18.

Connecticut courts have recognized causes of action against an employer for negligence in hiring, or supervision of an employee, in the situation where the employee

tortiously injures a third party.  See Seguro v. Cummiskey, 82 Conn. App. 186, 191-96

(2004).  A claim of negligent employment, like all negligence claims, requires

allegations of a duty to Miller, a breach by Ethan Allen of that duty, and that the breach

caused damages to Miller.  Chylinski v. Bank of America, 630 F.Supp.2d 218, 221 (D.

Conn. 2009).

        1.     Negligent Hiring

A negligent hiring claim "exists in any situation where a third party is injured by

an employer's own negligence in failing to select an employee fit or competent to

perform the services of employment."  Maisano v. Congregation Or Shalom, No.

NHCV074027175S, 2009 WL 415696, at *6 (Conn. Super. Ct. Jan. 26, 2009.)  In order

to state a claim for negligence, Miller cannot simply allege that Ethan Allen acted

negligently.  Rather, she must allege facts, which if proven, would support her claim.

See Fletcher v. City of New Haven Dept. of Police Serv., No. 10CV558(RNC), 2011 WL

1302247, at *3 (D. Conn. Mar. 31, 2011) (motion to dismiss was granted where the

plaintiff did not include in his complaint any facts regarding the identity of the person

negligently hired, or of the person doing the hiring, facts describing why the employee

was unfit for the position, facts showing the person doing the hiring was negligent, facts

describing the time and manner that the negligently hired employee caused the harm,

or facts showing a causal link between the harm suffered and the hiring decision).

Similarly to Fletcher, Miller has not alleged any facts identifying the individual

responsible for the alleged negligent hiring.  Miller alleges that both Legendre and

Mendeville are responsible for causing her harm, but she does not identify what harm is

attributable to each individual, nor does she identify why each individual was unfit for

their respective positions.  Miller fails to give facts regarding the date or time that the alleged harm took place.  And finally, Miller has failed to allege any facts describing how the individual doing the hiring was negligent.  The court grants Ethan Allen's Motion to Dismiss as to Miller's negligent hiring claim.

2.    Negligent Supervision

A negligent supervision claim requires a plaintiff to plead and prove that she suffered an injury "due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise."  <u>Abate v. Circuit-Wise, Inc.</u>, 130 F.Supp.2d 341, 344 (D. Conn. 2001).  In order to state a claim, a plaintiff must allege that a defendant knew or should have known of another employee's propensity to engage in the alleged tortious behavior.  <u>Shanks v. Walker</u>, 116 F. Supp. 2d 311, 314 (D. Conn. 2000).

With regard to the conduct of Legendre, Miller alleges that she complained of the assault to Ethan Allen, which would put Ethan Allen on notice that Legendre was capable of engaging in such tortious conduct.  <u>See</u> Compl. at ¶ 19.  However, there are no facts from which to infer that, at the time the tortious conduct was committed, Ethan Allen should have been or was aware of Legendre's propensity to act in such a manner. Miller also alleges that Mandeville assaulted Miller on July 31, 2009.  Compl. at ¶ 20. However, on the facts alleged by Miller, a jury could not find that Ethan Allen knew or should have known that Mandeville had the propensity to assault or inflict emotional distress on people with whom she worked.  Therefore, the court grants Ethan Allen's Motion to Dismiss as to Miller's negligent supervision claim.

E.    <u>Count Four: Claim for Intentional Infliction of Emotional Distress (IIED)</u>

A claim for Intentional Infliction of Emotional Distress ("IIED") may be brought for

conduct occurring during an ongoing employment relationship. <u>See</u> <u>Benton v. Simpson</u>, 78 Conn. App. 746, 756 (2003). In order to state a claim for IIED, a plaintiff must prove: (1) the actor inflicting the emotional harm intended to do so, or was, or should have been, aware that his conduct would result in such harm; (2) the conduct inflicting emotional harm was "extreme and outrageous;" (3) the conduct was the source of the emotional harm to the plaintiff; and (4) the emotional harm suffered was severe. <u>See</u> <u>Appleton v. Bd of Ed</u>, 254 Conn. 205, 210 (2000).

As to whether conduct is extreme and outrageous, the Connecticut Supreme Court has noted:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member fo the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

<u>Id</u>. at 210-11. "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." <u>Id</u>. at 210. However, if reasonable minds could differ as to whether the conduct alleged was extreme and outrageous, the claim must be submitted to a jury. <u>Id</u>.

Ethan Allen asserts that Miller has failed to state a claim upon which relief can be granted because the facts as alleged do not constitute extreme and outrageous conduct. <u>See</u> Mot. to Dismiss at 21-24. Miller, however, maintains she has satisfied the standard for extreme and outrageous conduct, with more than a mere recitation of conclusory statements. <u>See</u> Objection to Mot. to Dismiss at 33.

This court has held that a "routine employment action, even if made with improper motivations, does not constitute extreme or outrageous behavior." <u>Adams</u>, No. Civ. 3-03CV-0477(JCH), 2004 WL 1091728, at * 4 (D.Conn. May 14, 2004); <u>see also</u> <u>Javier v. Engelhard Corp.</u>, 2001 U.S. DIST. LEXIS 17341, at *14 (D. Conn. 2001); <u>Parsons v. United Techs. Corp.</u>, 243 Conn. 66, 88 (1997). Connecticut courts have also held that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions, or conduct that displays bad manners or results in hurt feelings, do not support a claim for intentional infliction of emotional distress ." <u>Miner v. Town of Cheshire</u>, 126 F. Supp.2d 184, 195 (D. Conn. 2000); <u>cf.</u> <u>Perodeau v. City of Hartford</u>, 259 Conn. 729, 757 (2002) (in rejecting claim for negligent infliction of emotional distress, observing that individuals in the workplace should expect to be subject to "workplace gossip, rivalry, personality conflicts and the like"). Further, individuals in the workplace should expect to experience some level of emotional distress. <u>Id.</u> Thus, most of Miller's allegations fail to raise a plausible basis for a claim of IIED.

However, persons in the workplace may not intentionally engage in "extreme and outrageous" conduct that inflicts severe emotional harm on co-workers. <u>See</u> <u>Benton</u>, 78 Conn. App. at 753-57. A court in this district has found that a claim for intentional infliction of emotional distress survives where there is an allegation of physical assault or battery. <u>See</u> <u>Javier v. Deringer-Hey, Inc.</u>, 578 F. Supp.2d 368, 374 (D. Conn. 2008) (Bryant, J.) (stating that an employee alleging he was verbally and physically assaulted by a co-worker could prove facts consistent with these allegations that would be extreme and outrageous). The Connecticut Appellate Court has held that two female employees stated a claim for IIED based on a series of alleged incidents involving their

male manager physically banging on objects that caused them to suffer emotional distress.  <u>Benton</u>, 78 Conn. App. at 758.

Miller's emotional distress claim arises out of the same facts as her previous claims, that is, she alleges that she was physically assaulted by Legendre who "grabbed the plaintiff's neck with great force, and held on" and also "slammed papers on the plaintiff's desk."  <u>See</u> Compl. ¶ 18.  Furthermore, Miller alleges that Mandeville "pushed her shoulder and removed her hand from the phone."  <u>See</u> Compl. ¶ 20. If Miller can prove facts consistent with these allegations, such proof could be found by a jury to be extreme and outrageous conduct.  At this stage, therefore, the court concludes that Miller has stated a claim for IIED with regard to her assault allegations.  <u>See</u> Compl. ¶¶ 17-18, 20.  The court denies Ethan Allen's Motion to Dismiss Miller's IIED claim in that respect.

F.    <u>Count Six: Claim for Assault and Battery</u>

Ethan Allen argues that Miller's assault and battery claim is insufficiently plead, and is furthermore preempted by the Workers' Compensation Act ("WCA").  <u>See</u> Mot. to Dismiss at 25.  With certain exceptions, the WCA is the exclusive remedy for personal injuries arising out of and in the course of the injured party's employment.  <u>See</u> Conn. Gen. Stat. § 31-284(a).  The WCA covers only claims that: (1) arise out of the plaintiff's employment and (2) occur "in the course of the employment within the meaning of [Conn. Gen. Stat.] § 31-275(1)."  <u>Herman v. Sherwood Indus., Inc.</u>, 244 Conn. 502, 505 (1998).   "The former requirement relates to the origin and cause of the accident, while the latter requirement relates to the time, place and circumstances of the accident."  <u>Id.</u>

The Connecticut Supreme Court has recognized an exception to the WCA

exclusivity provision for intentional torts committed by individuals "of such rank in the corporation that [they] may be deemed the alter ego of the corporation under the standards governing disregard of the corporate entity." Jett v. Dunlap, 179 Conn. 215, 218 (1979); Suarez v. Dickmont Plastics Corp., 242 Conn. 255, 274 (1997).  In articulating this exception, the Supreme Court noted that an employee should not be treated as the alter ego of a corporation where she or he is merely a supervisor or foreman.  See Jett, 179 Conn. at 219.  Unless the defendant employer directed or authorized the assault, "the employer has a right to view the incident as an injury arising out of and in the course of employment."  Id. at 218.

Miller has failed to allege anywhere in the Complaint that Ethan Allen "directed" or "authorized" any assault against her by Legendre or Mandeville, or that either individual can be deemed Ethan Allen's alter ego.  Consequently, Miller's claim for any physical assault and battery is preempted by the WCA.

However, the Connecticut legislature amended the WCA in 1993 to exclude from the definition of "personal injury" purely psychological injuries, i.e., a "mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease." Conn. Gen. Stat. § 31-275(16)(B)(ii). Thus, the WCA does not preempt actions to recover for emotional distress-type claims.  See Perodeau, 259 Conn. at 747 (holding that WCA did not bar common law tort claim of negligent infliction of emotional distress).  Miller's emotional distress claim arising out of the assault and battery alleged in her complaint is not preempted by the WCA.  See Compl. ¶¶ 17-20.

Therefore the court grants Ethan Allen's Motion to Dismiss Miller's claim for

assault and battery as to any claim for physical injury and denies it as to any claim for emotional distress.

## IV. CONCLUSION

For the reasons discussed above, the court **grants in part and denies in part** Ethan Allen's Motion to Dismiss [**Doc. No. 17**] as follows: the Motion to Dismiss is granted as Counts One, Two, Three, Five, and Six (in part); the Motion to Dismiss is denied as to Count Four and Count Six (in part). Plaintiff may move within **21 days** for leave to amend her Complaint to replead, if she has a factual and legal basis to do so. A proposed amended complaint must be attached to any motion for leave to replead.

As to Count Four and Count Six (in part), the court denies the Motion to Dismiss on substantive grounds. However, if the plaintiff does not move for leave to amend her Complaint, then the state claims will be remanded to state court, in keeping with Second Circuit precedent. See Valencia ex rel. Franco v. Lee, 316 F.3d 299, 306 (2d Cir. 2003) (where federal claims are "dismissed at a relatively early stage," the court should generally not exercise supplemental jurisdiction over remaining state law claims).


**SO ORDERED.**

Dated at Bridgeport, Connecticut this 22nd day of August, 2011.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge